SHARON MARIE JENKINS HAYES

VERSUS

PAUL C. HAYES

NO. 20-CA-90

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 36,731, DIVISION "A"
HONORABLE JASON VERDIGETS, JUDGE PRESIDING

December 02, 2020

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

**<u>AFFIRMED</u>**
**SMC**
**FHW**
**MEJ**

COUNSEL FOR DEFENDANT/APPELLANT,
PAUL HAYES
    DaShawn P. Hayes

**CHEHARDY, C.J.**

Appellant, Paul Hayes, appeals the denial of his petition to vacate certain Qualified Domestic Relations Orders (QDROs) and Amended QDROs signed by the trial court. For the reasons that follow, we affirm the trial court's ruling denying Mr. Hayes' petition to vacate.

### FACTS

Sharon Marie Jenkins Hayes and Paul C. Hayes were married June 1, 2002. On December 4, 2014, Mrs. Hayes filed a petition for divorce. The trial court entered a judgment of divorce on January 19, 2016, terminating the community of acquets and gains, effective December 4, 2014.

Mr. Hayes subsequently filed a Petition for Judicial Partition of Community Property and a Sworn Detailed Descriptive List of community assets and liabilities. He then filed a motion to deem his list a "Judicial Determination of Community Assets and Liabilities." Mrs. Hayes filed her own Detailed Descriptive List and the matter was set for hearing on August 24, 2018. The parties reached a compromise in open court regarding the partition of their community property, and each signed the "Partition of Community Property Agreement" that same day. Attached to the Partition were Exhibits explicitly stating the parties' assets and liabilities and how they were to be divided.[1] The Partition further stated:

---

[1] The relevant portion of Exhibit A to the Partition of Community Property Agreement provides that Mrs. Hayes is entitled to:

> 5. Fifty per cent (50%) of any and all interest in and to the ArcelorMittal, LaPlace, LLC Pension Plan for Bargained Employees, in the name of Paul C. Hayes, participant, accrued between June 2, 2002 and December 4, 2014, as outlined in the Joint Motion and Order to Obtain Qualified Domestic Relations Order to be prepared according to Plan Procedure, and submitted to the Court by the date ordered by the Court.

> 6. Any and all interest in and to the ArcelorMittal, LaPlace, LLC 401K Retirement Plan, in the name of Paul C. Hayes, participant, accrued between June 2, 2002 and December 4, 2014, as outlined in the Joint Motion and Order to Obtain Qualified Domestic Relations Order to be prepared according to Plan Procedure, and submitted to the Court by the date ordered by the Court.

> The parties discharge each other from any further accounting for their separate and paraphernal funds, the community of acquets and gains being fully partitioned as above set forth; they are satisfied with reference to reservation of each party's separate and paraphernal property; and they have agreed and do affirm that each has received full value for his or her entire interest in and to the community of acquets and gains and for reimbursement to their respective separate estates.

Each party also signed an affidavit stating that they were represented by counsel, they read and understood the Partition of Community Property Agreement, and they had executed the instrument of their own free will. The trial court then entered a Judgment ordering the attorneys for the parties to submit proposed Qualified Domestic Relations Orders (QDROs) for (1) Mr. Hayes' Arcelor Mittal, LaPlace, LLC Pension Plan; (2) Mr. Hayes' Arcelor Mittal, LaPlace, LLC 401K Retirement Plan; and (3) Mrs. Hayes' WalMart employees 401K Retirement Plan.[2] The Judgment also decreed that the Settlement of Community Property Agreement entered between the parties on August 24, 2018, was fair and equitable to both parties.

On December 12, 2018, counsel for Mrs. Hayes submitted QDROs for Mr. Hayes' Pension Plan and his 401K Retirement Plan, which the trial court signed the following day. The trial court signed an Amended QDRO for Mr. Hayes' 401K Retirement Plan on February 19, 2019, and an Amended QDRO for Mr. Hayes'

---

7. 100% interest in and to all cash in the WALMART 401K Plan, in the name of Sharon Marie Jenkins Hayes.

[2] The Internal Revenue Code, 26 U.S.C. § 414(p)(1), defines a Qualified Domestic Relations Order (QDRO) as an order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternative payee the right to, receive all or a portion of the benefits payable with respect to a participant under a retirement plan." A state authority, generally a court, must actually issue a judgment, order, or decree or otherwise formally approve a property settlement agreement before it can be a "domestic relations order." *See also* U.S.C. 29 § 1056 (d)(3)(B)(ii).

Mr. Hayes' petition to vacate judgment filed in the trial court complained that at no point was a QDRO for Mrs. Hayes' WalMart 401K retirement plan submitted, but the Partition of Community Property Agreement signed by both parties clearly established that Mrs. Hayes was entitled to 100% of her WalMart 401K. Because no benefits are being assigned to another payee, a QDRO for the WalMart plan is not necessary.

Pension Plan on April 22, 2019.[3] Each QDRO was prepared by counsel for Mrs. Hayes, and the original QDROs appear to have been presented to Mr. Hayes' counsel for review.[4]

Mr. Hayes filed a "Petition to Vacate Judgment with Incorporated Memorandum" on May 3, 2019. He argued that the QDROs submitted by plaintiff regarding defendant's Pension Plan and 401k Plan failed to account for the reimbursements and credits he is owed, to which, Mr. Hayes alleges, they agreed in open court on August 24, 2018. Mr. Hayes further alleged that the QDROs and Amended QDROs were submitted to the trial court without the signature of Mr. Hayes or his counsel, yet the court signed the QDROs anyway. He argues these QDROs were based upon error and mistake and therefore present grounds for nullity. The trial court denied Mr. Hayes' petition to vacate judgment. Mr. Hayes timely filed this devolutive appeal.

## DISCUSSION

---

[3] The relevant portion of the original Pension Plan QDRO provided: "The Alternate Payee is awarded (50 per cent) of the Participant's Accrued Benefit under the Plan as of (the 1st day of June, 2002) through (the 4th day of December, 2014) [multiplied by a fraction, the numerator of which is (174) the number of [months] of marriage during which benefits were accumulated prior to the Division Date and the denominator of which is 228) the total number of [months] during which benefits were accumulated prior to such date]." (Emphasis added).

The Amended Pension Plan QDRO provides: "The Alternate Payee is awarded 50% (fifty per cent) of the Participant's Accrued Benefit under the Plan earned from the period of 1st day of June, 2002 through the 4th day of December 2014. (Emphasis added).

The relevant portion of the original 401K Plan QDRO provided: "(g) The Plan Administrator of the Plan shall transfer to the Alternate Payee the sum of $29,343.00 (twenty-nine thousand three hundred forty-three) dollars of the Participant's vested account balance as of December 11, 2014." (Emphasis added).

The Amended 401K Plan QDRO provides: "(g) The Plan Administrator of the Plan shall transfer to the Alternate Payee the sum of $29,343.00 (twenty-nine thousand three hundred forty-three) dollars of the Participant's vested account balance as of January 26, 2018." (Emphasis added).

[4] Counsel for Mrs. Hayes included Rule 9.5 Certificates with the December 12, 2018 QDROs submitted to the trial court, which indicate that she prepared the QDROs according to plan procedure and circulated the proposed QDROs to counsel for Mr. Hayes, both by facsimile and by hand delivery under his office door; that no opposition was received; and that she allowed five working days before presenting the proposed QDRO to the Court. The record does not include Rule 9.5 Certificates with the February 19, 2019 and April 22, 2019 Amended QDROs, but includes the Clerk of Court's Notice of Mailing for all QDROs, including the Amended QDROs, to Mr. Hayes' counsel.

Mr. Hayes argues without specificity that the trial court should have vacated the QDROs because they do not reflect the terms of the parties' stipulated agreement. Mr. Hayes states in his brief: "the consent judgment or compromise was not perfected in writing, however, it was recited in open court and there was a full discussion on the record." In addition, Mr. Hayes contends that because neither he nor his attorney signed the QDROs and Amended QDROs, there was no meeting of the minds as to their contents and they are void.

At the December 2019 hearing on the petition to vacate judgment, counsel for Mr. Hayes introduced into evidence a portion of the transcript from the August 24, 2018 hearing at which he represented to the trial court that the parties discussed a change in certain calculations and that those changes "will [be] put in a more complete order for you, but as far as the judgement [sic] is concerned, … there is an exhibit attached to that which basically corroborates what we've done on that more detailed list." Mr. Hayes did not object to the trial court's signing of the August 24, 2018 judgment memorializing Mr. and Mrs. Hayes' Partition Agreement, nor did he move to amend *that* judgment based on any alleged calculation error under La. C.C.P. art. 1951 or by moving for a new trial under La. C.C.P. art. 1973.[5] The transcript excerpt that counsel for Mr. Hayes introduced as evidence at the December 2019 hearing also reflects the trial court's questioning of Mr. Hayes and Mrs. Hayes at the August 2018 hearing, asking if they understood the contents of the proposed judgment and exhibits attached, and if the parties agreed to their contents. Each party indicated his or her agreement.

A judgment may be annulled for vices of form or vices of substance. La. C.C.P. art. 2001. For purposes of the annulment articles, vices of form are limited to judgments (1) against an incompetent person not represented as required by law;

---

[5] Generally there is no appeal from a consent judgment. La. Civ. Code art. 2085; *Hicks v. Hicks*, 561 So.2d 188 (5th Cir.), *writ denied*, 564 So.2d 327 (La. 1990).

(2) against a defendant who has not been served with process as required by law; and (3) by a court lacking subject matter jurisdiction. La. C.C.P. art. 2002. Under La. C.C.P. art. 2003, a defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin the enforcement, may not annul the judgment on any of the grounds enumerated in La. C.C.P. art. 2002.

There are no allegations that Mr. Hayes is incompetent; even if there were, it is clear from the record that Mr. Hayes continuously has been represented by counsel. Moreover, there is no suggestion that the trial court lacked subject matter jurisdiction to rule in this case. Finally, Mr. Hayes does not allege that he failed to receive notice of the proposed QDROs when presented to the trial court, nor does he claim that he did not receive notice that the trial court signed the QDROs presented. The record contains the Clerk of Court's Notice of Signing sent to Mr. Hayes' counsel, Mr. Ford, for all four QDROs. None of the conditions in La. C.C.P. art. 2002 is satisfied here.

La. C.C.P. art. 2004 governs annulment of a judgment for vices of substance. It provides that a party may bring an action to annul a final judgment obtained by fraud or ill practices within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices. Mr. Hayes has not alleged that the QRDOs were presented to or signed by the trial judge through fraud or ill practices, however.

Mr. Hayes lastly argues that the QDROs are invalid because neither he nor his attorney had executed them, yet the trial court signed them anyway. Mr. Hayes fails to point to any statute or rule indicating that his or his agent's signature is necessary to render the QDROs valid and enforceable. La. R. Dist. Ct., App. 25 for Ascension, Assumption, and St. James Parishes, "Court-Specific Rules on

Preparation and Submission of Judgments in Family Law Proceedings," states, in pertinent part:

> 3. The party or attorney responsible for preparing the judgment or order must circulate the proposed judgment or order to all counsels of record and self-represented parties to allow five working days for comment before presentation to the Court in accordance with Uniform District Court Rule 9.5.
>
> 4. When submitted, the proposed judgment or order must be accompanied by a certificate regarding the date of mailing, hand delivery, or other method of delivery of the document to other counsel of record and to unrepresented parties, and stating whether any opposition was received and the basis for the opposition. The certificate must also contain a request for execution of the judgment over the opposition or in the absence of signature of the other counsels of record or self-represented party.
>
> 5. Counsel for the parties or self-represented litigants shall prepare and submit a Qualified Domestic Relations Order or other plan for employee benefits, along with the judgment to be signed if required. If the order involved self-represented parties, the documents shall be notarized.

These Local District Court Rules do not require each litigant and/or their attorneys to sign the QDRO before submitting it to the trial court for signature; they require only that the attorney preparing the proposed Order also include a Rule 9.5 Certificate. While the record does not include Rule 9.5 Certificates for the Amended QDROs, the original QDROs, presented to the court for its signature on December 12, 2018, did include Rule 9.5 Certificates signed by counsel for Mrs. Hayes, and the portion of the QDROs to which Mr. Hayes objects did not change in the Amendments. Finally, the United States Department of Labor indicates there is no requirement "that both parties to a marital proceeding sign or otherwise endorse or approve [a qualified domestic relations] order."[6] *Cf.* 29 U.S.C. § 1056 (d)(3)(C), (D), and (E).

---

[6] *See* https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/qdro-overview.pdf.

## DECREE

Mr. Hayes has failed to establish that the Qualified Domestic Relations Orders signed by the trial court should be vacated. Accordingly, we affirm the trial court's ruling denying Mr. Hayes' petition to vacate judgment.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 2, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-90

### E-NOTIFIED
23RD JUDICIAL DISTRICT COURT (CLERK)
HON. JASON VERDIGETS (DISTRICT JUDGE)
DASHAWN P. HAYES (APPELLANT)

### MAILED
DEMETRIE E. FORD (APPELLANT)
ATTORNEY AT LAW
716 THIRD STREET
GRETNA, LA 70053

DEBORAH E. DUGAS (APPELLEE)
ATTORNEY AT LAW
POST OFFICE BOX 554
RESERVE, LA 70084